**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-3067

_____

ALAN MARBAKER, CAROL MARBAKER,
JERRY L. CAVALIER, FRANK K. HOLDREN,

Appellants

v.

STATOIL USA ONSHORE PROPERTIES, INC.,
FKA Statoilhydro USA Onshore Properties, Inc.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:17-cv-01528)
District Judge: Honorable A. Richard Caputo

_____

Submitted Under Third Circuit L.A.R. 34.1
on September 12, 2019

Before: HARDIMAN, GREENAWAY, JR., and BIBAS, *Circuit Judges*

(Filed: February 13, 2020)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

A party cannot compel class arbitration without the opposing party's affirmative consent. A class-arbitration clause can show that consent, but a bilateral arbitration clause cannot. Alan and Carol Marbaker (and two other landowners) allege that Statoil underpaid them royalties on their oil and gas leases. The leases have arbitration clauses. So the Marbakers asked the District Court to declare either (1) that Statoil had waived any right to enforce those clauses or else (2) that those clauses allow class arbitration. Instead, the District Court dismissed their suit, rejecting the waiver claim as unripe and the class-arbitration claim on the merits.

We will affirm. The Marbakers may assert waiver if Statoil tries to compel arbitration. Because Statoil has not done so yet, their waiver defense is unripe. And though the class-arbitration claim is ripe, it lacks merit. The clauses say nothing about class arbitration. If the parties want that, they must affirmatively agree to it.

## I. BACKGROUND

In exchange for royalties, some landowners lease to energy companies the right to extract oil and gas from their land. Statoil bought a share of more than 32,000 of these leases in the Marcellus Shale area in Pennsylvania and neighboring states. The landowners fall into two groups: the leases of those in the first group had arbitration clauses, while the leases of those in the second group did not. The Marbakers belonged to the first group; Cheryl Canfield, to the second group.

In 2015, the Marbakers, on behalf of the first group of landowners, filed a class-arbitration demand against Statoil to recover unpaid royalties with the American Arbitration

2

Association (AAA). At the same time, they filed a complaint in federal district court, seeking a declaratory judgment that their leases permit class arbitration. The parties soon agreed to mediate. So the Marbakers voluntarily dismissed their declaratory-judgment suit and agreed to stay arbitration pending mediation. Mediation lasted for about two years.

Meanwhile, in 2016, Canfield filed a class-action suit against Statoil, seeking royalties on behalf of the second group of landowners. She could do so because the leases of her class, unlike those of the Marbakers' class, lacked arbitration clauses. Statoil moved to dismiss the *Canfield* suit. The district court dismissed most of the *Canfield* class's claims. Afterwards, Canfield started negotiating a settlement of her remaining claims. Right around then, Statoil's mediation with the Marbakers broke down.

Fearing that the *Canfield* settlement could "extinguish [their] claims," the Marbakers reached out to Canfield's counsel and tried to get involved in the class-settlement discussion. App. 56. But counsel for Canfield declined their offer.

Ordinarily, someone with qualms about a class settlement will move to intervene or file objections. The Marbakers did neither. Instead, in 2018, right after Canfield sought preliminary approval of a class settlement, the Marbakers moved to consolidate their suit with the *Canfield* suit. The District Court denied that motion.

The Marbakers also refiled their declaratory-judgment suit, adding a new claim. Their amended complaint asked the District Court to declare either (1) that Statoil had waived its right to enforce its arbitration clauses or (2) that those clauses permit class arbitration. In other words, they sought either to block bilateral arbitration or to compel class-wide arbitration.

3

Statoil moved to dismiss both counts. The District Court granted that motion in full. It dismissed Count One without prejudice, finding that Statoil's alleged waiver of arbitration rights would not be ripe until Statoil moved to compel arbitration. And it dismissed Count Two with prejudice because we have held that nearly identical leases do not permit class arbitration.

The Marbakers now appeal the District Court's dismissal of both counts of their declaratory-judgment suit. They also appeal its denial of their motion to consolidate that suit with the *Canfield* suit. The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under § 1291. We review its dismissal de novo. *Allen v. DeBello*, 861 F.3d 433, 437–38 (3d Cir. 2017). We review its denial of the motion to consolidate for abuse of discretion. *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 100 (3d Cir. 2015).

## II. THE DISTRICT COURT PROPERLY DISMISSED THE MARBAKERS' WAIVER CLAIM AS UNRIPE

Count One of the declaratory-judgment suit, alleging that Statoil waived its right to enforce its arbitration clauses, is not ripe. To decide whether a declaratory-judgment claim is ripe, we analyze three factors: (1) whether the parties' interests are adverse, (2) whether a declaratory judgment would be conclusive, and (3) whether that judgment would be useful or practically helpful. *Step-Saver Data Sys., Inc. v. Wyse Tech., The Software Link, Inc.*, 912 F.2d 643, 647–50 (3d Cir. 1990). The first factor is dispositive here. *Id.* at 648. Because the parties' legal interests are not yet adverse, there is no justiciable controversy on Count One.

The Marbakers' interest in proving waiver is not adverse to Statoil's until Statoil moves to compel arbitration. And Statoil may petition to compel arbitration if the Marbakers file their royalty claims in court someday or otherwise evade Statoil's attempts to arbitrate that dispute. *See* 9 U.S.C. §4. As in *Step-Saver*, Count One collapses at the word "if." 912 F.2d at 647. It is only *if* the Marbakers evade arbitration and *if* Statoil then moves to compel arbitration that the Marbakers may then raise waiver as a defense. But a request to declare valid a defense that the Marbakers *might* raise in a future proceeding that Statoil *might* bring is not ripe. *See Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411–13, 415 (3d Cir. 1992) (holding declaratory claims unripe because they hinged on actions a defendant had not yet taken); *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 541 (3d Cir. 2017) (applying *Armstrong World Indus., Inc.*).

The District Court dismissed Count One without prejudice. If the Marbakers evade arbitration and Statoil petitions to compel bilateral arbitration, the Marbakers may renew their claim then. Until then, the parties' interests are not adverse. So we will affirm the District Court's dismissal of Count One.

### III. THE DISTRICT COURT PROPERLY REACHED AND DISMISSED THE MARBAKERS' CLASS-ARBITRATION CLAIM

Count Two of the declaratory-judgment suit asked the District Court to declare that the Marbakers' leases allow class arbitration. The Marbakers argue that once the District Court found Count One unripe, it should not have reached the merits of Count Two. They also contest the merits, arguing that their leases do allow class arbitration. Both objections fail.

5

**A. The Marbakers' class-arbitration claim is ripe**

Unlike Count One, Count Two asks the District Court to resolve a ripe contract-interpretation dispute: whether their leases allow class arbitration. To see why, we must again apply our three-factor ripeness test. *Step-Saver*, 912 F.2d at 647.

First, the parties' interests are adverse. The Marbakers' interest in the meaning of their arbitration clauses became adverse to Statoil's when they took opposing positions in their ongoing arbitration. *See Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 188, 190–92 (3d Cir. 2009) (finding adversity because the parties were disputing whether an indemnity clause covered an action, even before the liability was paid). The dispute here is not contingent, but active and ongoing.

Second, the District Court provided a conclusive judgment. The District Court held that the Marbakers' leases do not allow class arbitration. That ruling clarifies "the legal status of the parties." *See id.* at 192 (quoting *Step-Saver*, 912 F.2d at 648). Both sides now know that the Marbakers may not seek class-wide relief in arbitration.

Finally, the judgment is useful. The District Court's ruling settled an issue that the parties could not have resolved in any other way. When an arbitration clause is silent about class arbitration, a court—not an arbitrator—must decide whether the contract allows class arbitration. *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335–36 (3d Cir. 2014). The Marbakers' leases do not mention class arbitration. So only a court could have resolved this issue. By taking class arbitration off the table, the District Court freed both parties to seek other ways to resolve their dispute.

6

In sum, the Marbakers' class-arbitration request satisfies all three prongs of our ripeness test. Count Two was thus ripe for review. On to the merits.

## B. The District Court correctly found that the Marbakers' arbitration clauses do not authorize class arbitration

The Marbakers' leases do not allow class-wide arbitration. Courts may not force parties to arbitrate unless they have consented to it. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682–84 (2010). The terms of the parties' contract govern who must arbitrate what, with whom, when, and how. *Id.* at 682–83. Class arbitration is one of those important terms, because it differs greatly from bilateral arbitration. It aggregates many more disputes, handles much higher stakes, compromises confidentiality, and binds absent parties. *Id.* at 686–87. Thus, courts will not force parties "to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 684. Contractual silence is not enough. *Id.* at 685. Nor is contractual ambiguity. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019). We will not infer consent. *See id.* at 1416. Rather, there must be an "affirmative 'contractual basis'" for finding that the parties consented specifically to *class* arbitration. *Id.* at 1416 (quoting *Stolt-Nielsen*, 559 U.S. at 684).

The Marbakers' leases fall well short of that standard. Indeed, they do not even mention class arbitration. While the phrase "class arbitration" is not essential, its absence makes it harder to show that the parties consented to it. *Chesapeake Appalachia, LLC v. Scout Petrol., LLC*, 809 F.3d 746, 758–59 (3d Cir. 2016).

And the five leases here use bilateral language to describe the disputing parties. Each arbitration clause sets out a process for resolving disputes about "this Lease," singular.

App. 76, 83, 90, 108, 130. Each lease is signed by a "Lessor" and a "Lessee," singular. App. 74, 82, 89, 94, 119. And three of the arbitration clauses explicitly govern "disagreement[s] between Lessor and Lessee," referring to those two individual parties. App. 76, 83, 90; *cf.* App. 108, 130 (the other two arbitration clauses cover "[a]ny controversy or claim arising out of or relating to this Lease"). True, each lease's assignability provision lets more than one person or company qualify as "Lessor" and "Lessee." App. 76, 83, 90, 101, 125. But that does not show any intent to resolve disputes across multiple leases as a class. The textual cues are all bilateral, contemplating disputes between just two parties.

To overcome this contractual omission, the Marbakers try to inject extrinsic evidence to show that the parties "contemplated class arbitration." Appellants' Br. 43. They note that some landowners negotiated their lease terms together, that Statoil paid them royalties based on their fractions of a shared oil and gas pool, that Statoil holds fractional commercial interests in other companies' leases, and that at least one energy company settled a previous dispute by class settlement.

But this extrinsic evidence proves nothing. Statoil signed the leases one by one with individual landowners and paid them royalties individually. Its co-ownership does not matter. Another company's litigation strategy is irrelevant. And none of this shows a course of performance after the parties entered the contract.

In any event, extrinsic evidence cannot add to the terms of the leases themselves. Because we sit in diversity, we apply the substantive law of the forum state—here, Pennsylvania. *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 182 (3d Cir. 2017). Under Pennsylvania law, "[w]hen the terms of a contract are clear and unambiguous, the intent of the parties is

to be ascertained from the document itself." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004)). We see no ambiguity in the leases, let alone the affirmative consent required to authorize class arbitration. *Lamps Plus*, 139 S. Ct. at 1416.

Finally, the Marbakers note that the parties agreed to follow the AAA's rules. By agreeing to follow those rules, they arguably agreed to follow the AAA's Supplementary Rules too. *See* AAA, *Supplementary Rules for Class Arbitrations* (2003) ("AAA Suppl. R."). The Supplementary Rules sometimes allow class arbitration. *See Id.* R. 1(a). But the Association buries the Supplementary Rules in "a daisy-chain of cross-references—going from the Leases themselves to the rules of the American Arbitration Association to the Commercial Rules and, at last, to the Supplementary Rules." *Scout Petrol.*, 809 F.3d at 761 (internal quotation marks omitted). In *Scout Petroleum*, we suggested that a short, general reference to the AAA's rules does not "incorporate[ ] a panoply of collective and class action rules." *Id.* at 762.

Although *Scout Petroleum* resolved a different question (whether the parties agreed to let an arbitrator decide class arbitrability), its reasoning applies here too. There, we noted that the AAA's general Commercial Rules use bilateral language and anticipate bilateral conflict. *Scout Petrol.*, 809 F.3d at 759–60, 762–63. And those rules do not mention the Supplementary Rules. *Id.* at 763. We thus held that a general reference to the AAA's rules did not manifest the parties' consent to class arbitration. *Id.* at 765–66. So too here.

Even if the parties had directly mentioned the Supplementary Rules, we still would not infer consent. Those rules say that when "construing the applicable arbitration clause," the

9

reviewer "*shall not consider* the existence of these Supplementary Rules" in deciding whether the clause allows class arbitration. AAA Suppl. R. 3 (emphasis added). So at the clause construction stage, we cannot hold that the Supplementary Rules show that the parties agreed to class arbitration. *See Reed Elsevier, Inc. ex. rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599–600 (6th Cir. 2013).

In sum, the Marbakers' leases do not affirmatively authorize class arbitration. We will thus affirm the District Court's dismissal of Count Two on the merits.

## IV.  THE DISTRICT COURT PROPERLY DENIED THE MOTION TO CONSOLIDATE

Because both claims fail, the motion to consolidate does not matter. In any event, the District Court properly denied it. The two actions that the Marbakers sought to consolidate presented different questions: the Marbakers' declaratory-judgment suit was about a threshold procedural issue (the meaning of their arbitration clause), while the *Canfield* suit was about the merits (whether Statoil had underpaid royalties). Neither the operative facts nor the legal standards overlapped, particularly since the two sets of leases had different royalty terms. The District Court refused to let the Marbakers "convert a run-of-the-mill consolidation motion into a substantive attack on a potential class settlement." *Marbaker v. Statoil USA Onshore Props., Inc.*, No. 3:17-cv-01528, 2018 WL 2981341, at *3 n.4 (M.D. Pa. June 14, 2018). That ruling was reasonable, not an abuse of discretion. The Marbakers did not have to use a motion to consolidate as a back door into the *Canfield* suit. They could have easily protected their interests in that case by following the ordinary course: moving to intervene and objecting to the proposed settlement. *See* Fed. R. Civ. P.

24. Or they could just opt out of the settlement, retaining their rights. *See* Fed. R. Civ. P. 23(c)(2)(B)(v). Their fear of having their rights extinguished was groundless.

\* \* \* \* \*

Though the Marbakers might regret their agreement to arbitrate bilaterally, they cannot turn it into a right to arbitrate class-wide. Their effort to block bilateral arbitration will not be ripe until Statoil tries to compel arbitration. And their effort to compel class arbitration fails on the merits, because their arbitration clauses say nothing about it and address only bilateral disputes. We will thus affirm.