**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3268
_____

WILLIAM JOSEPH WEBB, JR.,
                                        Appellant

v.

DEPARTMENT OF JUSTICE, ADMINISTRATES
JUSTICE; ISLANDA L. FINAMORE, DEPUTY
ATTORNEY GENERAL; JOELLE P. HITCH, JUDGE -
FAMLY COURT, NEW CASTLE COUNTY; DIVISION
OF YOUTH AND FAMILY SERVICES; SUZANNE
VALLE, SOCIAL WORKER; ROBERT MAY, WARDEN;
UNKNOWN DEJESUS, STAFF LIEUTENANT FOR
INTERNAL AFFAIRS; STACEY HOLLIS, TREATMENT
ADMINISTRATOR; UNKNOWN THONGVONG,
COUNSELOR
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-22-cv-00933)
District Judge: Honorable Richard G. Andrews
_____

_____

Submitted Under 3rd Cir. LAR 34.1(a)
on May 20, 2024

Before: RESTREPO, FREEMAN, and McKEE, *Circuit Judges*

(Opinion filed: September 27, 2024)

_____

Don Arrington
Cara Costanzo
Jennifer Hance
Mary E. Levy
Stephanie Terinoni
Temple University Beasley School of Law
1719 N Broad Street
Philadelphia, PA 19122

Jessica Rickabaugh
Tucker Law Group
1801 Market Street
Ten Penn Center, Suite 2500
Philadelphia, PA 19103

   *Counsel for Appellant*

Nicholas D. Picollelli, Jr.
Office of Attorney General of Delaware
Delaware Department of Justice
820 N French Street
Wilmington, DE 19801

Gregory E. Smith
Office of Attorney General of Delaware
Delaware Department of Justice
102 W Water Street, 3rd Floor
Dover, DE 19904

*Counsel for State of Delaware by Special Appearance*

_____

**OPINION OF THE COURT**

_____

**FREEMAN**, *Circuit Judge*.

William Webb, an inmate at Delaware's James T. Vaughn Correctional Center (JTVCC), sued prison officials for failing to schedule court-ordered visits with his daughter. The District Court screened and dismissed the suit, holding that Webb did not exhaust JTVCC's internal grievance process or allege a valid constitutional claim. Seeking to appeal, Webb placed a notice of appeal in a mailbox for JTVCC staff to collect and file electronically. We deem his notice filed on the day he placed it in that mailbox, so his appeal is timely. And because the complaint states a plausible claim for relief, we will reverse the District Court's order and remand the case for further proceedings.

# I

## A

At all times relevant to this case, Webb has been incarcerated at JTVCC.[1] In October 2020, a Delaware family court issued an order granting him visits with his daughter. Since that order, however, prison officials have arranged only one father-daughter visit. That visit, held in 2021, lasted fifteen minutes, was supervised by an official from the state child-services agency, and concluded "without incident or intervention" from the supervising official. App. 21. But no visits have been scheduled since, and Webb has become estranged from his daughter as a result.

Seeking additional visits, Webb filed a grievance through the prison's internal procedure. That grievance was returned to him as unprocessed. He tried to follow up by writing to three prison officials, but none of them adequately responded.

Webb, representing himself, then filed suit against several JTVCC employees. He alleged that prison officials violated his constitutional right to "reunification" and he sought money damages and injunctive relief. App. 24.

The District Court dismissed the pro se complaint under the screening provisions of 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B), which authorize courts to quickly dismiss defective lawsuits from incarcerated plaintiffs. The Court held

---

[1] We take these facts from Webb's complaint and, at this stage of the case, assume that they are true. *Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023).

4

that the complaint had two fatal flaws: it revealed that Webb failed to exhaust JTVCC's internal grievance process, and it stated no valid claim for relief against the JTVCC employees.[2] The Court determined that amendment would be futile, so it did not permit Webb to amend his complaint.

B

On November 22, 2022—twenty-eight days after the District Court dismissed his complaint—Webb signed his notice of appeal and took steps to send it to the Court. For reasons we will discuss below, the Court did not receive his notice of appeal until November 29, thirty-five days after it entered its dismissal order.

Because it appeared that Webb's notice of appeal was untimely filed, the Clerk of this Court flagged the appeal for possible dismissal. Webb (still representing himself) opposed dismissal, arguing that his notice was timely filed under the prison mailbox rule. We appointed counsel for Webb and directed the parties to brief the timeliness issue alongside the merits.[3]

---

[2] Webb's complaint also named other defendants and raised other claims. The District Court held that those defendants were immune from suit, and Webb does not challenge those holdings on appeal.

[3] We thank appointed counsel from the Temple University Beasley School of Law for ably representing Webb in this appeal. We are also grateful to the Delaware Department of Justice, which entered a special appearance at our request and

5

**II**

Before addressing the merits of Webb's appeal, we must determine whether it was timely filed. The answer turns on an issue of first impression in our Court: whether the prison mailbox rule established in *Houston v. Lack*, 487 U.S. 266 (1988) and codified in Rule 4(c) of the Federal Rules of Appellate Procedure applies to a system in which prison officials electronically file inmates' court documents. We hold that it does. Because Webb used this system and otherwise complied with Rule 4(c), his notice of appeal was timely filed.

In civil cases, a party seeking to appeal a district court's order or judgment must file a "notice of appeal . . . with the district clerk within 30 days after the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A).[4] This thirty-day deadline is "mandatory and jurisdictional," *Bowles v. Russell*, 551 U.S. 205, 209 (2007) (citation omitted), so we cannot hear

expressed its positions on timeliness and the merits. Because the District Court dismissed Webb's suit before any of the defendants were served, they were not obligated to participate in this appeal. 3d Cir. L.A.R. 31.2 (2011).

[4] There are some exceptions to this rule, none of which apply here. *See, e.g.*, Fed. R. App. P. 4(a)(1)(B) (extending the deadline to sixty days when the United States, a federal agency, or a federal officer or employee sued in their official capacity is a party).

an appeal if the notice was filed late, *Sec'y of Lab. v. Doyle*, 675 F.3d 187, 189 n.1 (3d Cir. 2012).[5]

We assess whether the notice was timely by looking to the date it was "filed with the district clerk." Fed. R. App. P. 4(a)(1)(A). For most litigants, a document is filed when it is delivered to the district clerk. *See* Fed. R. Civ. P. 5(d)(2); *United States v. Lombardo*, 241 U.S. 73, 76 (1916). But we calculate filing dates differently for incarcerated litigants. Recognizing that these litigants face unique disadvantages, the Supreme Court developed the prison mailbox rule. *Houston*, 487 U.S. 266. Under this rule, we treat an incarcerated litigant's notice of appeal as "filed at the time [he] delivered it to the prison authorities for forwarding to the court clerk." *Id.* at 276.

The prison mailbox rule was later codified in Rule 4(c) of the Federal Rules of Appellate Procedure. Fed. R. App. P. 4(c) advisory committee's note to 1993 amendment; *see Long v. Atl. City Police Dep't*, 670 F.3d 436, 441 n.11 (3d Cir. 2012).[6] As relevant here, Rule 4(c)(1) provides that "[i]f an inmate files a notice of appeal[,] . . . the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing." Fed. R. App. P. 4(c)(1). To benefit from this rule, an incarcerated litigant must meet two

---

[5] The District Court exercised jurisdiction under 28 U.S.C. § 1331. Its order dismissing the complaint is a final order under 28 U.S.C. § 1291.

[6] The rule announced in *Houston* applied to incarcerated pro se litigants, but codification extended it to any "[i]nmate [c]onfined in an [i]nstitution," not just those representing themselves. Fed. R. App. P. 4(c).

conditions. First, "[i]f an institution has a system designed for legal mail, an inmate confined there must use that system." *Id.* Second, the litigant must provide evidence corroborating the date that the notice was deposited in the prison's mail system: either "a declaration in compliance with 28 U.S.C. § 1746 . . . or a notarized statement," *id.* 4(c)(1)(A)(i),[7] or some other "evidence (such as a postmark or date stamp) showing that the notice was . . . deposited and that postage was prepaid," *id.* 4(c)(1)(A)(ii). If no such evidence accompanies the notice of appeal, we may "exercise[] [our] discretion to permit the later filing of a declaration or notarized statement that satisfies Rule 4(c)(1)(A)(i)." *Id.* 4(c)(1)(B).

Our jurisdiction to hear this appeal turns on whether Webb benefits from the prison mailbox rule. His notice of appeal was delivered to the district clerk more than thirty days after the dismissal order. However, he argues that we should apply the prison mailbox rule and deem his notice of appeal filed on the date when he placed it in a designated electronic-filing mailbox in his housing unit, which was within the thirty-day window. We invited the State of Delaware to address this question by special appearance. The State accepted our invitation, described the electronic filing process at JTVCC, and conceded that the prison mailbox rule should apply to it. We agree.

---

[7] To comply with 28 U.S.C. § 1746, a declaration executed in the United States must say "substantially the following": "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)[.]"

As the State explains, JTVCC has established an electronic filing system for inmates' court documents. Under an agreement between the Delaware Department of Corrections and the United States District Court for the District of Delaware, prisoners at JTVCC file documents with the District Court by placing them in a mailbox in their housing unit. Security staff gather these filings and bring them to the prison's central mailroom. Paralegals then collect the filings from the mailroom, log them in a spreadsheet, scan them, and email them to the District Court.[8] (Inmates housed in units with access to JTVCC's law library have an additional option: they can bring their court filings directly to the law library for a paralegal to log, scan, and email to the Court. Webb is housed in a unit without access to the law library, so he must use an in-house mailbox for electronic filing.

Following this procedure, Webb placed his notice of appeal in an in-house mailbox on November 22. That is the date listed on the notice and the accompanying certificate of service, in which Webb stated that he "served a true and correct copy of the attached Notice of Appeal . . . by placing [the] same in the U.S. mailbag at JTVCC." App. 14–15. Webb later confirmed in an affidavit that he "placed the Notice of Appeal in the in-house mail on the date it was signed." App. 41.

We have not yet applied the prison mailbox rule to a system like JTVCC's, in which prison officials submit inmates' filings electronically. When the rule was developed, court documents were delivered by hand or by mail. But changing filing methods have not disturbed the underlying

---

[8] This agreement does not cover inmates at other Delaware prisons or filings in Delaware state courts.

legal principle. The Supreme Court developed the prison mailbox rule because incarcerated litigants lose control of their legal submissions as soon as they give them to prison officials. "Unskilled in law, unaided by counsel, and unable to leave the prison," prisoners "ha[ve] no choice but to entrust the forwarding of [their] notice[s] of appeal to prison authorities whom [they] cannot control or supervise and who may have every incentive to delay." *Houston*, 487 U.S. at 271.

With this reasoning in mind, we see no meaningful distinction between inmate filings that prison staff submit to the court electronically and those that are delivered on paper. Even though Webb's notice was filed electronically, he lost the ability to monitor its progress and ensure its timely delivery to the District Court as soon as he placed it in the prison's in-house mailbox. It is no surprise, then, that our sister circuit had little trouble extending the prison mailbox rule to electronic filings—after all, "pro se prisoners are no more able to guarantee that properly tendered documents are e-filed than that they're mailed." *Taylor v. Brown*, 787 F.3d 851, 859 (7th Cir. 2015). Following its lead, we hold "that a pro se prisoner's legal documents are considered filed on the date that they're tendered to prison staff in accordance with reasonable prison policies, regardless of whether they are ultimately mailed or uploaded" electronically. *Id.*[9]

_____

[9] Like the Seventh Circuit, we recognize that some language in Rule 4(c) does not neatly translate to electronic filings. For instance, the rule requires incarcerated litigants to provide a declaration, notarized statement, or other evidence that postage was prepaid. Fed. R. App. P. 4(c)(1)(A)(i), (ii). This

10

We also conclude that Webb met the other requirements of Rule 4(c)(1). By placing his notice in the in-house mailbox, he used his prison's established system for handling legal mail. And the signed and dated certificate of service he submitted alongside his notice of appeal is "evidence . . . showing that the notice was so deposited" sufficient to satisfy Rule 4(c)(1)(A)(ii). *See Baker v. United States*, 670 F.3d 448, 451 n.2 (3d Cir. 2012) (presuming that an incarcerated litigant filed a document on the date he executed it); *United States v. Rinaldi*, 447 F.3d 192, 194 n.6 (3d Cir. 2006) (same); *Long*, 670 F.3d at 439 n.4 (same); *cf. Ford v. Wilson*, 747 F.3d 944, 949 (7th Cir. 2014) (citing "the certificate of service [the incarcerated litigant] included with his notice of appeal" as additional evidence of timely filing).[10] Webb's notice was therefore timely filed, and we may proceed to the merits of his appeal.

## III

Turning to the merits, Webb challenges the District Court's screening-stage dismissal on two grounds. First, he

---

requirement "is obviously not applicable when e-filing." *Taylor*, 787 F.3d at 859 n.10.

[10] Even if the certificate of service were insufficient, we would exercise our discretion to accept Webb's subsequently submitted affidavit, which supports his version of events and complies with Rule 4(c)(1)(A)(i). Fed. R. App. P. 4(c)(1)(B); *see Carney v. Oklahoma Dep't of Pub. Safety*, 875 F.3d 1347, 1351 (10th Cir. 2017) ("We exercise our discretion under Fed. R. App. P. 4(c)(1)(B) to permit the later filing of [the incarcerated litigant's] declaration and deem the appeal timely.").

11

says that his complaint did not definitively allege that he failed to exhaust JTVCC's internal grievance process. And second, he argues that his complaint stated a valid constitutional claim. We review the dismissal de novo, accepting the complaint's factual allegations as true. *Dooley v. Wetzel*, 957 F.3d 366, 373 (3d Cir. 2020).[11] Applying this standard, we agree with Webb on both fronts.

A

Under the Prison Litigation Reform Act (PLRA), inmates must "exhaust[]" "such administrative remedies as are available" in the prison system before bringing a lawsuit about prison conditions in federal court. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life . . . ." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

As the statute makes clear, prisoners need only exhaust "available" administrative remedies. *Ross v. Blake*, 578 U.S. 632, 635–36 (2016). In this context, "available" means "capable of use to obtain some relief for the action complained of." *Id.* at 642 (cleaned up). A prison's internal grievance process is not "available" if, for example, (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) it is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it,"

---

[11] Because Webb drafted the complaint himself, we construe it liberally, holding it to "less stringent standards" than one drafted by a lawyer. *Durham*, 82 F.4th at 223 (quoting *Shorter v. United States*, 12 F.4th 366, 371 (3d Cir. 2021)).

or (3) "prison administrators thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Id.* at 643–44.

In addition, an incarcerated plaintiff generally need not demonstrate that he exhausted his prison's available grievance procedures in his complaint. Failure to exhaust administrative remedies "is an affirmative defense the defendant must plead and prove," so the issue is typically resolved later in the litigation process. *Mack v. Warden Loretto FCI,* 839 F.3d 286, 295 (3d Cir. 2016) (quoting *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013)); *see Jones v. Bock*, 549 U.S. 199, 216 (2007). But there is a narrow exception to this rule: when the inmate's complaint itself makes clear that he failed to exhaust the prison's available grievance procedures, a court may dismiss the suit without waiting for the defendants to raise the issue and meet their burden of proof. *Talley v. Clark*, 111 F.4th 255, 264 (3d Cir. 2024).

The District Court concluded that the exception applied here. Yet a review of Webb's complaint leaves us far from certain that his allegations conveyed a failure to exhaust JTVCC's available grievance procedures. True, Webb marked the "No" checkbox in response to the complaint form's question "[i]s the grievance process completed?" App. 24. But the form offered a section for further explanation, in which Webb wrote that his grievance "was returned as unprocessed," that he then "went on the tablet and wrote" to prison officials, and that he received "an illegal response." *Id.*

Reading Webb's complaint as a whole, then, it is not obvious that he failed to exhaust JTVCC's available grievance procedures. His explanation raises the "reasonable inference[]" that, by the time he filed his complaint, he had

13

taken his grievance as far as it could go in the prison's internal process. *Durham*, 82 F.4th at 223; *see Small*, 728 F.3d at 273 (holding that a prisoner exhausted available remedies when he did not receive a decision on his grievance and the prison had no process for appealing non-decisions); *Hacker v. Dart*, 62 F.4th 1073, 1081 (7th Cir. 2023) (prisoner exhausted when there was "no conceivable next step for [him] to take" (cleaned up)); *cf. Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (prisoner exhausted administrative remedies when his prison failed to respond to his grievance on time). Alternatively, Webb has plausibly alleged that JTVCC's rules for unprocessed grievances were "so opaque" that they rendered administrative remedies unavailable. *Ross*, 578 U.S. at 643. Without a developed record on JTVCC's grievance procedures, we will leave it to the District Court to make these determinations in the first instance. But the complaint raises enough uncertainty about exhaustion to preclude dismissal at the screening stage.[12]

---

[12] While we reach this conclusion based on Webb's complaint alone, we observe that the United States District Court for the District of Delaware has repeatedly found JTVCC's policies for unprocessed grievances to be confusing or indeterminate. *See, e.g.*, *Fatir v. Phelps*, No. 18-1549, 2021 WL 827142, at *8 (D. Del. Mar. 4, 2021) ("If the [Delaware Department of Corrections] requires inmates to administratively exhaust grievances returned as 'unprocessed' then prison policy should indicate the process to exhaust unprocessed grievances."); *Abbatiello v. Metzger*, No. 19-1317, 2021 WL 678137, at *4 (D. Del. Feb. 22, 2021) ("Our District Court has previously

14

B

Webb's complaint withstands the screening stage for an additional reason: construed liberally, it states a valid claim for relief. The complaint alleges that "[s]ince October 19, 2020, [Webb] has had court ordered visits to be scheduled" by prison officials, that those visits have "only been performed once" despite that single visit concluding "without incident or intervention," and that he is in "immediate danger of estrangement" from his daughter as a result. App. 21–22.

Though "inartfully pleaded," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted), these allegations support a plausible freedom-of-association claim under the First and Fourteenth Amendments. The Constitution "protects

---

noted that the returns of unprocessed grievance instructions in use at JTVCC are confusing at best." (cleaned up)); *Montgomery v. Onuoha*, No. 19-001, 2020 WL 4673828, at *3 (D. Del. Aug. 12, 2020) (holding that the "[p]laintiff had no available administrative remedies" because his grievances were returned as unprocessed and the prison had no rules outlining how to proceed). Because the PLRA's exhaustion requirement is so unforgiving, "prisons should create understandable grievance procedures" that are "clear and transparent enough to allow ordinary inmates to navigate them." *Hacker*, 62 F.4th at 1078. Fair, transparent procedures further the interests of inmates and prison officials alike. *See Mack*, 839 F.3d at 296 (observing that grievances processes offer prison officials an opportunity to gather information and "take appropriate responsive measures" before an inmate sues (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)).

an individual's right to enter into and maintain certain intimate human relationships," including the parent-child relationship. *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 431 (3d Cir. 2020) (cleaned up). Because "freedom of association is among the rights least compatible with incarceration," this right is sharply curtailed in prison. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). But it is not extinguished altogether. *Id.* ("We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration . . . ."); *see also Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 759 (3d Cir. 1979) (upholding a ban on contact visits but observing that the policy did "not preclude[] [a prisoner] from visiting with members of his family and others"). Indeed, "while the [Supreme] Court has sustained significant abridgments of prisoners' associational rights, . . . [those] sustained policies have often contained exceptions expressly privileging prisoners' communications with immediate family members." *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1013 (9th Cir. 2023).

To evaluate policies that burden prisoners' constitutional rights, courts use the well-worn, four-factor test set out in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987).[13] At its

---

[13] Webb also argues on appeal that his complaint plausibly alleges a substantive due process claim under the Fourteenth Amendment. This claim is closely intertwined with the freedom-of-association claim: both rely on the complaint's allegations that prison officials impeded Webb's relationship with his daughter. We decline to define the boundaries

core, that test asks whether the challenged policy is "reasonably related to legitimate penological interests." *United States v. Haymond*, 588 U.S. 634, 653 (2019) (quoting *Turner*, 482 U.S. at 89). This "highly fact sensitive" inquiry is ill-suited to resolution on the complaint alone. *Jones v. Brown*, 461 F.3d 353, 364 (3d Cir. 2006). And while the inquiry is deferential to prison officials by design, "it is also not a blank check." *Tiedemann*, 72 F.4th at 1013.

Unsurprisingly, then, we cannot resolve the *Turner* analysis at this early stage. We read Webb's claim that the visit with his daughter concluded "without incident or intervention" to allege that prison officials' failure to schedule further visits was not rationally related to legitimate penological interests—an allegation that we must take as true for now. App. 21. And without any responsive pleading from the defendants, we cannot assess how they justify their actions. While we express

---

between these claims at this early stage because both would be subject to the *Turner* test. *Nasir v. Morgan*, 350 F.3d 366, 370 (3d Cir. 2003) (explaining that "the Supreme Court has consistently applied the *Turner* standard to prisoners' constitutional rights claims," including substantive due process claims); *see Doe v. Delie*, 257 F.3d 309, 323 (3d Cir. 2001) (holding that "prison inmates retain a Fourteenth Amendment substantive due process right to privacy in their medical information" but that the right's scope was limited by the *Turner* test).

17

no opinion on the ultimate merit of Webb's claim, the complaint's allegations are sufficient at this juncture.[14]

* * *

For the reasons set forth above, we will reverse the District Court's order dismissing Webb's complaint and remand the case for further proceedings.

---

[14] Because we conclude that Webb's complaint, read liberally, states a constitutional claim, we need not determine whether the District Court erred in denying Webb permission to amend it. *See Kedra v. Schroeter*, 876 F.3d 424, 434 n.3 (3d Cir. 2017).