**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2098
_____

GARY ALEXANDER BARNES,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A241-694-926)
Immigration Judge: Dennis Ryan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 26, 2025
Before:  HARDIMAN, FREEMAN, and ROTH, *Circuit Judges*

(Opinion filed: May 19, 2026)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Gary Barnes, proceeding pro se, has filed a petition for review of a final order of removal issued by the Board of Immigration Appeals ("BIA"). We will deny the petition.

I.

Barnes, a native and citizen of Jamaica, entered the United States without inspection in 2022. In May 2023, he filed a pro se I-589 application. That application raised claims for asylum and withholding of removal based on his political affiliations. Barnes alleged that his aunt "was brutally killed (burnt alive) in our house by members of an opposing political party" in July 2021. A.R. at 464. He alleged that his father was also killed by those same "said persons" in 2022, shortly after Barnes entered the United States. Id.

Barnes later retained counsel, who filed an amended I-589 application in September 2024. That application added Barnes' membership in a particular social group as a basis for his asylum and withholding claims; the application also raised new claims under the Convention Against Torture ("CAT"). All of these claims stemmed from a different set of key factual allegations. Barnes alleged that gang members had raped his mother in 2010, that she had testified against them, and that the gang has since pursued Barnes' entire family. Barnes claimed that this family history was what had motivated the burning of his aunt's house in 2021 and his father's murder in 2022.

In removal proceedings, Barnes testified regarding the history of gang violence he had raised in his amended application. Among other things, Barnes added that, in

2

December 2021, gang members killed two of his cousins. Barnes claimed that these killings were "all over the news." Id. at 181. He explained that his father was killed in August 2022 by a relative of the gang member who had raped his mother. Barnes also testified that his half-sister called the police to identify his father's killer. In his direct testimony, Barnes never addressed any link between the gangs and the political parties in Jamaica. Only in response to questions on cross-examination did he first attempt to articulate such a link.

On cross-examination, counsel for the Government and the Immigration Judge ("IJ") asked Barnes why his original I-589 application did not mention anything about his mother's rape, her cooperation with the police, and the gang's subsequent persecution of his family. Barnes responded that he had hired two lawyers who failed to file an application, that he was unsure of the process when he filed his pro se application, and that he believed he could provide all the evidence later. In response to further cross-examination, Barnes interrupted the Government's attorney and was admonished by the IJ to let her finish her questions before responding.

When asked about the news reports of his cousins' murders that were allegedly "all over the news," Barnes stated that the relevant news article was on a local news blog and that "it's going to be hard to find it." Id. at 205, 207. When asked if anything happened to his half-sister after she reported their father's murder to the police, Barnes stated that her house had recently been burned down. When asked why he did not

3

provide this information in his direct testimony, Barnes stated that he only recently found out, and that he didn't think he was asked about this issue by his counsel.

The IJ denied relief, concluding, among other things, that Barnes was not credible and that he lacked evidence to corroborate his claims. The BIA affirmed based on the adverse credibility determination and declined to address the IJ's alternative rulings on the merits. Barnes filed a timely petition for review.[1]

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA affirmed based solely on the IJ's adverse credibility determination, we review only those grounds. See Blanco v. Att'y Gen., 967 F.3d 304, 310 (3d Cir. 2020). We review the adverse credibility determination for substantial evidence, "meaning that the agency's determination is conclusive unless the record compels a contrary determination." Sunuwar v. Att'y Gen., 989 F.3d 239, 250 (3d Cir. 2021) (citation omitted). Given the "wide latitude" afforded to IJs, "only the most extraordinary circumstances justify overturning an adverse credibility determination." Id. at 250–51 (cleaned up); see also 8 U.S.C. § 1158(b)(1)(B)(iii) (among other things, the IJ may base a credibility determination on the "demeanor, candor, or responsiveness of the applicant," the

---

[1] The BIA's order was entered on May 6, 2025. Under the circumstances here, see ECF No. 7 at n.2, we conclude that Barnes timely filed his petition for review on May 20, 2025. See 8 U.S.C. § 1252(b)(1); Webb v. Dep't of Just., 117 F.4th 560, 565 (3d Cir. 2024); United States v. Rinaldi, 447 F.3d 192, 194 n.6 (3d Cir. 2006).

"inherent plausibility" of the account, inconsistencies between written and oral statements, and the consistency of such statements with other evidence).

III.

Barnes did not establish the extraordinary circumstances necessary to justify overturning the agency's adverse credibility determination here. The agency properly based its determination on the fact that Barnes' initial I-589 omitted any claim related to gang persecution and any allegation regarding the key events (his mother's testimony against her assaulters) that allegedly motivated this persecution. We have held that such an "omission of a key event from an alien's written asylum application can support an adverse credibility finding." Sunuwar, 989 F.3d at 252 (cleaned up). On appeal, Barnes has primarily argued that the initial counsel he had retained was at fault for the omission. But here, as in Sunuwar, we conclude that the petitioner's claim that "his prior counsel is at fault" is not an explanation "that a reasonable factfinder would be compelled to accept." Id. at 252–52.

Moreover, the agency properly relied on additional reasons for the adverse credibility determination that are also supported by the record, including Barnes' evasive demeanor and implausible explanations on cross-examination. Barnes was evasive when he interrupted the Government's attorney, and his statement that his cousins' murders were "all over the news" was inconsistent with his admission on cross-examination that the news would be difficult to find. Nor did he provide a plausible explanation for why he did not testify on direct examination regarding the recent harm to his half-sister and

5

the alleged connection between the gangs and political parties. We reject Barnes'

argument that his demeanor and unpersuasive explanations could not support an adverse

credibility determination. See Lin v. Att'y Gen., 543 F.3d 114, 127–28 & n.9 (3d Cir.

2008) (noting that unpersuasive and evasive testimony may support an adverse credibility

determination), abrogated on other grounds by Santos-Zacaria v. Garland, 598 U.S. 411

(2023).

Under the circumstances here, "it is clear that [petitioner] cannot prevail" on his

claims "without credible testimony." Sunuwar, 989 F.3d at 252;[2] see also Ordonez-

Tevalan v. Att'y Gen., 837 F.3d 331, 342 (3d Cir. 2016). Among other deficiencies, in

the absence of credible testimony, Barnes provided no evidence to show that the harm he

fears is on account of a protected ground or that the Jamaican government would

acquiesce in any harm amounting to torture. See generally Shehu v. Att'y Gen., 482 F.3d

652, 657 (3d Cir. 2007) (discussing the nexus requirement in context of asylum and

withholding claims); Myrie v. Att'y Gen., 855 F.3d 509, 517 (3d Cir. 2017) (discussing

acquiescence in the context of CAT claims).

Accordingly, we will deny the petition for review.

---

[2] Although Barnes mentioned that he had a claim about corroboration, he has forfeited any argument regarding an inability to corroborate his claims by failing to develop that argument in his brief. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016) (explaining that any issue that an appellant fails to develop in an opening brief is forfeited); see also Saravia v. Att'y Gen., 905 F.3d 729, 739 (3d Cir. 2018). We do not consider the matters outside the Administrative Record that Barnes attached to his briefing. See 8 U.S.C. § 1252(b)(4)(A); Yoc-Us v. Att'y Gen., 932 F.3d 98, 114 (3d Cir. 2019).